BLAKESLEE ARPAIA CHAPMAN, INC. *v.*
DEPARTMENT OF TRANSPORTATION
(SC 17275)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued February 10—officially released May 31, 2005

*William J. Egan,* with whom, on the brief, was *Barbara E. Crowley,* for the appellant (plaintiff).

*Carol K. Young,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The plaintiff, Blakeslee Arpaia Chapman, Inc., appeals from the judgment of the trial court

denying its application to vacate, in part, an arbitration award obtained against the defendant, the state department of transportation, on the ground that the award did not include the appropriate amount of damages for home office overhead costs, liquidated damages and interest. The plaintiff claims on appeal that the trial court improperly denied its application to vacate the arbitration award because the arbitrators' failure to award the full amount of damages requested was inconsistent with their findings of fact in manifest disregard of General Statutes § 4-61 (e),[1] which requires that arbitrators issue in writing their findings of fact, a decision interpreting the contract and applying it to the facts found and an award. We disagree and affirm the judgment of the trial court.

---

[1] General Statutes § 4-61 provides in relevant part: "(a) Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined . . . .

"(b) As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. . . .

"(e) The arbitrators shall conduct the hearing and shall hear evidence as to the facts, and arguments as to the interpretation and application of contractual provisions. After the hearing, the arbitrators shall issue in writing: (1) Findings of fact, (2) a decision in which the arbitrators interpret the contract and apply it to the facts found and (3) an award. The arbitrators' findings of fact and decision shall be final and conclusive and not subject to review by any forum, tribunal, court or government agency, for errors of fact or law. Awards shall be final and binding and subject to confirmation, modification or vacation pursuant to chapter 909. . . ."

The record reveals the following facts and procedural history. The dispute between the plaintiff and the defendant arose from a contract dated August 15, 1994, for the plaintiff's rehabilitation of three bridges located in New Haven—the Olive Street bridge, the Fair Street bridge and the Crown Street bridge. The dispute involved certain delays in the completion of the Olive Street and the Fair Street bridges and the appropriate amount of remuneration due to the plaintiff pursuant to the contract. The plaintiff filed a demand for arbitration with the American Arbitration Association, pursuant to § 4-61, to resolve the dispute. It is undisputed that the plaintiff's submission to arbitration was unrestricted.[2]

Pursuant to § 4-61 (e), the arbitrators issued a written decision setting forth the following findings of fact relevant to this appeal. The contract required the plaintiff to complete construction of the three bridges within 1507 calendar days and provided for liquidated damages in the amount of $2000 per day for the plaintiff's failure to meet the contract deadline. The contract required that the plaintiff complete construction on the Olive Street bridge within 450 calendar days and provided for liquidated damages in the amount of $900 per day for the plaintiff's failure to complete the bridge in a timely manner. The start date for construction on the Olive Street bridge was September 28, 1994, and the completion date was set for August 21, 1996,[3] but the

[2] The plaintiff conceded to the trial court that its submission was unrestricted. "A submission is unrestricted when . . . the parties' arbitration agreement contains no language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005).

[3] This completion date takes into account winter shutdowns over the life of the contract. See Connecticut Department of Transportation, Standard Specifications for Roads, Bridges and Incidental Construction § 1.08.07 (1988), which provides in relevant part: "The total elapsed time in calendar days, excluding the months of December, January, February and March, from the date on which the [c]ontractor is ordered to begin operations to the date on which the [e]ngineer pronounces the project completed, shall be considered as the time spent in the execution of the contracted work."

arbitrators found that the defendant had extended the completion date to April 4, 1997. The bridge was completed and opened to traffic on August 21, 1998.

In its submission to arbitration, the plaintiff sought, inter alia, $317,285.76 in field office overhead costs and $705,180 in home office overhead costs because "its work on the Olive Street bridge was extended by 730 days by actions for which the [defendant] was responsible." The arbitrators concluded that "[d]ue to the delays caused by [the defendant], [the plaintiff's] time of performance for the Olive Street project was extended by a total of 665 calendar days." The plaintiff "was able to mitigate this delay by 55 days, in part by working during the winter shutdown periods, resulting in its time of performance being extended by a net of 610 calendar days." The arbitrators found that during the 610 days of extended performance, the plaintiff had incurred additional field overhead costs as a direct result of delays caused by the defendant and, accordingly, determined that the plaintiff was entitled to recoup these costs in the amount of $264,441.40. The arbitrators concluded that the plaintiff was not entitled to recover any extended home office overhead costs, however, because the contract was completed in less time than the contract period of 1507 calendar days.

In its submission to arbitration, the plaintiff also sought, inter alia, $453,600 in improperly withheld liquidated damages. The arbitrators concluded that the defendant withheld a total of $453,600 in liquidated damages "representing [$900] per day for each of 504 days between April 4, 1997 [revised completion date] and August 21, 1998 [actual completion date]." The arbitrators found that the plaintiff was responsible for 120 days of delay and, therefore, that the defendant properly withheld liquidated damages in the amount of $108,000. The arbitrators further found that the defendant

improperly withheld $345,600 in liquidated damages for 384 days.

The plaintiff asserted thirteen claims against the defendant seeking damages and interest in connection with the Olive Street bridge project. The arbitrators found in favor of the plaintiff on nine of its claims,[4] but awarded interest to the plaintiff on only three of those claims upon concluding that the damages sought for only those claims were "payable" and "wrongfully withheld" within the meaning of *White Oak Corp.* v. *Dept. of Transportation*, 217 Conn. 281, 302, 585 A.2d 1199 (1991).[5] Accordingly, on October 23, 2003, the arbitra-

---

[4] The plaintiff sought damages and interest for the following claims: (1) $1,053,934.03 in increased costs associated with the demolition of the Olive Street bridge; (2) $32,284.76 in costs for the design and execution of an operation to jack the Olive Street bridge and to replace the bearing pads at the east abutment; (3) $16,626.98 in increased costs for the construction of the southwest wingwall; (4) $319,878.13 in unpaid additional costs associated with the anchors and piles required for the project; (5) $108,440.92 in costs for the revised design of the northwest wingwall; (6) $20,041.65 in costs associated with the excavation of the north abutment; (7) $27,258.75 as reimbursement for amounts paid to railroad employees; (8) $453,600 in liquidated damages improperly withheld by the defendant; (9) $9097.46 in acceleration costs; (10) $76,622 in lost efficiency costs and $78,185 in lost opportunity costs; (11) $705,180 in home office overhead costs; (12) $317,285.76 in field office overhead costs; and (13) $254,675.98 in idle equipment costs. The arbitrators found in favor of the plaintiff on claims one, two, four, five and six and awarded damages in the amounts requested by the plaintiff. The arbitrators also found in favor of the plaintiff on items three, eight, twelve and thirteen, but instead of awarding the full amount requested, awarded damages in the amount of $15,158.08, $345,600, $264,441.40 and $8013.76, respectively. The arbitrators found in favor of the defendant on items seven, nine, ten and eleven.

[5] In *White Oak Corp.* v. *Dept. of Transportation*, supra, 217 Conn. 283–84, the plaintiff contractor brought a claim against the defendant department of transportation for prejudgment interest pursuant to General Statutes (Rev. to 1983) § 4-61. This court concluded that prejudgment interest may be awarded if the trier of fact determines that past due amounts are payable and wrongfully withheld. Id., 302. We noted that "sums may be payable even if they were not, strictly speaking, liquidated until the judgment. . . . The test, where the sum reflects compensation for a pecuniary injury, is whether the sums were not so uncertain that a defendant could not have been on notice as to the amount it was required to pay. . . . The sums due [the

tors rendered a decision in favor of the plaintiff and awarded damages and interest in the amount of $2,448,293.66.

The plaintiff filed an application to confirm, in part, the arbitration award pursuant to General Statutes § 52-417,[6] and to modify or to vacate, in part, the arbitration award pursuant to General Statutes §§ 52-418 and 52-419.[7] Specifically, the plaintiff sought to confirm the

plaintiff] became payable when it submitted its requisitions to the state, allowing for the terms of payment prescribed by contract or statute. For some items, such as the amounts claimed for extra work ordered by the state, that date would likely be when the work was performed, even before the final acceptance of the contract; for others, such as delay damages, the date might be the date [the plaintiff] gave the state notice of the amounts it claimed as delay damages." (Citations omitted; internal quotation marks omitted.) Id., 302–303 n.18. In the present matter, the arbitrators concluded that the plaintiff had proved "that amounts were 'payable' as defined in [*White Oak Corp.*] and 'wrongfully withheld' and should recover interest" on its claims relating to superstructure jacking, the north abutment and liquidated damages.

[6] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[7] General Statutes § 52-418 (a) provides: " Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

General Statutes § 52-419 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial

award in the amount of $2,448,293.66 and to modify or to vacate the award with respect to the arbitrators' failure to award, consistent with their findings of fact, the full amount of damages requested for extended home office overhead costs, liquidated damages and interest. The trial court granted the plaintiff's application to confirm the award. The court denied, however, the plaintiff's application to modify the award because the "failure of the arbitrators to award the precise figures advanced by the plaintiff [is] the result not of a miscalculation but the result of a finding of fact or law which, under [§] 4-61 (e), the court is powerless to disturb. Rather, it is evident from the extensive decision of the arbitrators that each of these issues was fully presented to them, and that they found such facts and made such calculations as they felt the evidence warranted. The choice of the plaintiff to initiate a [§ 4-61] arbitration included the choice to be bound by the decision of the arbitrators even if the decision contained 'errors of fact or law.' " The trial court also denied the plaintiff's application to vacate the award because "no persuasive argument was advanced that any section of . . . § 52-418, which covers the vacating of arbitration awards, was applicable here." The plaintiff thereafter sought to reargue the decision because "[t]he court's holding . . . [did] not address [the plaintiff's] core argument, which was based on the 'manifest disregard of the law' standard incorporated in § 52-418 . . . ."

district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b) The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

The trial court denied the plaintiff's motion for reargument because "[t]he court considered all of the plaintiff's arguments in rendering its decision . . . ." The plaintiff appealed to the Appellate Court from the judgment of the trial court denying its application to vacate the Olive Street bridge award and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff claims on appeal that the trial court improperly denied its application to vacate, in part, the arbitration award because the arbitrators manifestly disregarded the law. The plaintiff argues that the arbitrators' findings of fact were inconsistent with their award, which violated the requirement in § 4-61 (e) that they set forth, in writing, "(1) [f]indings of fact, (2) a decision in which the arbitrators interpret the contract and apply it to the facts found and (3) an award." Specifically, the plaintiff argues that the arbitrators: (1) inconsistently awarded damages for field office overhead costs but did not award damages for home office overhead costs; (2) appear to have computed liquidated damages on the basis of the original contract completion date of August 21, 1996, instead of the revised contract completion date of April 4, 1997; and (3) awarded interest on three of the plaintiff's claims because the defendant wrongfully withheld sums that were payable within the meaning of *White Oak Corp.* v. *Dept. of Transportation,* supra, 217 Conn. 302 n.18, but failed to award interest on the plaintiff's six other claims, even though, under the *White Oak Corp.* test, these sums were also wrongfully withheld and payable. See footnote 5 of this opinion. We disagree that the arbitrators manifestly disregarded the law.

"Our analysis is guided by the well established standard of review of arbitration awards. Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the author-

ity of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"The resulting award can be reviewed, however, to determine if the award conforms to the submission. . . . Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . The significance, therefore, of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of

what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision.
. . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418. . . . General Statutes § 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . We have also recognized, however, that an arbitrator's egregious misperformance of duty may warrant rejection of the resulting award. In *Darien Education Assn.* v. *Board of Education*, 172 Conn. 434, 437–38, 374 A.2d 1081 (1977), we noted that [i]f the memorandum of an arbitrator revealed that he had reached his decision by consulting a ouija board, surely it should not suffice that the award conformed to the submission. . . . Other states have also recognized that an arbitrator's egregious misperformance of duty or patently irrational application of legal principles warrants review and rejection of the resulting award. . . .

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the

arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 92–95, 868 A.2d 47 (2005).

Although the requirements of § 4-61 (e), that arbitrators issue in writing their findings of fact, a decision interpreting the contract and applying it to the facts found and an award, are "well defined, explicit, and clearly applicable"; id., 95; the statute contains no well defined, explicit or clear requirement that the award be consistent with the findings of fact. As a result, the plaintiff cannot satisfy the elements necessary to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law. Id. Rather, the statute dictates the *form* of the arbitrators' findings,

decision and award. In the present matter, the arbitrators issued 308 findings of fact, a thirteen page decision applying those facts to the contract and an award. Accordingly, the form of their findings, decision and award complied with the requirements set forth in § 4-61 (e).

To the extent that the plaintiff claims that the arbitrators manifestly disregarded the law of damages, we reject the plaintiff's claim because it would require the court to undertake a review of the arbitrators' findings of fact and conclusions of law in violation of the express language of § 4-61 (e) and our well established standard of review for awards rendered pursuant to unrestricted submissions. See General Statutes § 4-61 (e) ("[t]he arbitrators' findings of fact and decision shall be final and conclusive and not subject to review by any forum, tribunal, court or government agency, for errors of fact or law"); see also *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 93 (" '[u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact' "). As previously explained, an exception to this rule exists where a party seeking to vacate an arbitration award can establish that the arbitrators manifestly disregarded the law in violation of § 52-418 (a) (4). See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 95; see also General Statutes § 4-61 (e) ("[a]wards shall be final and binding and subject to confirmation, modification or vacation pursuant to chapter 909"). A review of the arbitrators' extensive findings of fact, decision and award demonstrates that the plaintiff is unable to satisfy this narrow exception. See *Garrity* v. *McCaskey*, supra, 223 Conn. 13 (affirming trial court's denial of defendant's application to vacate arbitration award, where defendant

argued that arbitrators manifestly disregarded law of damages, because "[s]uch a contention is a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418 [a] [4]"). Accordingly, the trial court properly denied the plaintiff's application to vacate the arbitration award.

The judgment is affirmed.

In this opinion the other justices concurred.