# MICHAEL G. ECONOMOS ET AL. *v.* LILJEDAHL BROTHERS, INC.
## (SC 17394)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued March 13—officially released August 8, 2006

*Brendon P. Levesque*, with whom were *Karen L. Dowd* and, on the brief, *Anita M. Varunes*, for the appellants (plaintiffs).

*David R. Clemens*, with whom was *James H. Lee*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiffs, Michael G. Economos and Bessie Economos, appeal, following our grant of certification,[1] from the judgment of the Appellate Court reversing the judgment of the trial court granting their application to vacate an arbitration award and denying the motion of the defendant, Liljedahl Brothers, Inc., to confirm that award in its favor. *Economos* v. *Liljedahl Bros., Inc.*, 86 Conn. App. 578, 587, 862 A.2d 312 (2004). The plaintiffs claim that the Appellate Court improperly concluded that the arbitrator did not manifestly disregard the law when he awarded the defendant contractor damages for the breach of a home improvement con-

---

[1] We granted the plaintiffs' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court improperly vacated the arbitration award because the arbitrator manifestly disregarded the law?" *Economos* v. *Liljedahl Bros., Inc.*, 273 Conn. 913, 870 A.2d 1082 (2005).

tract, despite changes to the contract that failed to comply with the Home Improvement Act, General Statutes § 20-418 et seq., specifically General Statutes § 20-429 (a).[2] We disagree and, accordingly, we affirm the judgment of the Appellate Court.

The record and the Appellate Court opinion reveal the following relevant facts and procedural history. "On April 3, 2000, the parties entered into a home improvement contract in which the defendant agreed to renovate a bathroom and laundry room in the home of the plaintiffs. On September 15, 2000, the parties entered into a second home improvement contract in which the defendant agreed to remodel a kitchen and add a den to the plaintiffs' house. Under the terms of each contract, any controversy arising out of the contracts was to be settled by arbitration."[3] *Economos* v. *Liljedahl Bros., Inc.*, supra, 86 Conn. App. 579.

During the course of the remodeling projects, the defendant submitted change orders[4] for additional work

---

[2] General Statutes § 20-429 (a) provides: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of the contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor."

[3] The two contracts contained identical provisions that provide as follows: "Arbitration—Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

[4] Although we are unable to find a consistent definition of change orders, our research indicates that, in the context of a home improvement project, they are generally itemizations of changes to the project requested by the

completed on the project. The total added cost to the bathroom and laundry room project was $4460.49; the total added cost to the kitchen and den project was $16,348.12.[5]

"Subsequently, a dispute arose between the parties, and the defendant filed a demand for arbitration and a mechanic's lien on the plaintiffs' house. The plaintiffs responded by filing an answer, special defenses and an amended counterclaim. On December 17, 2001, the plaintiffs filed a motion for summary judgment, which was denied. Following the arbitration hearing, which encompassed nine days of testimony, the arbitrator awarded the defendant $81,890.24 and the plaintiffs $30,423.69 for a net award of $51,466.55 for the defendant. The award concluded: 'This award is in full settlement of all claims and counterclaims submitted to this

owner or necessitated by the circumstances and executed by the contractor, resulting in adjustments of the completion date and contract price. See American Institute of Architects, Standard Form of Agreement Between Owner and Contractor, § 7.2.1 ("[a] Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following: .1 change in the work; .2 the amount of the adjustment in the Contract Sum, if any; and .3 the extent of the adjustment in the Contract Time, if any"); see also 1 J. Sweet & J. Sweet, Construction Industry Contracts (4th Ed. 1999) § 11.01, p. 321 (Noting that the term traditionally referred to "the method by which the owner exercises a contractual power to change the work. Usually, construction contracts give the owner the power, within limits, to change the work unilaterally. The contractor must comply before there has been any agreement resulting in a price and time adjustment."). Our definition is consistent with the changes clause of both contracts in the present case, which stated simply: "Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate."

[5] The defendant submitted three change orders for the April 3, 2000 contract and four change orders for the September 15, 2000 contract. The plaintiffs dispute five of these change orders, including the entire added cost of the bathroom and kitchen project, and $9442.99 of the additional kitchen and den cost. The plaintiffs do not dispute a change order that credited them $1430, although it, too, was unsigned; they also do not dispute the validity of a signed change order adding $6905.13 to the kitchen and den project.

Arbitration. All claims not expressly granted herein are hereby, denied.' Subsequently, the arbitrator died, and the parties were referred to the court system by the American Arbitration Association for the resolution of any outstanding issues.

"On October 23, 2002, the plaintiffs, pursuant to General Statutes §§ 52-418 and 52-419, filed an application to vacate or to modify the arbitration award, claiming that the arbitrator 'acted with evident partiality or corruption,' refused to hear pertinent evidence and exceeded his powers. On November 7, 2002, the defendant, pursuant to General Statutes § 52-417, filed a motion to confirm the arbitration award and for an award of postarbitration interest. Following a hearing on the parties' motions, the court denied the defendant's motion to confirm the arbitration award and vacated the award because it failed to address three of the claims raised by the plaintiffs." Id., 579–80.

The defendant appealed, claiming that the trial court "improperly (1) denied its motion to confirm the arbitrator's award and (2) vacated the arbitrator's award." Id., 580. The plaintiffs countered that the trial court "properly vacated the arbitrator's award and denied the defendant's motion to confirm the award because the award (1) did not conform to the submission, (2) violated public policy and (3) was an 'egregious application of the law . . . .'" Id. The Appellate Court did not reach the plaintiffs' public policy claim; id., 587 n.2; but reversed the trial court's judgment based on its conclusions that the award conformed with the submission[6] and was not an egregious application of the law.

---

[6] Although the parties agreed that the submission to the arbitrator was unrestricted, they disputed what constituted that submission. *Economos* v. *Liljedahl Bros., Inc.*, supra, 86 Conn. App. 581–82. The defendant claimed that the entire submission was contained in the original contract language; see footnote 3 of this opinion; and the plaintiffs countered that the submission included their pleadings before the arbitrator. The Appellate Court agreed with the defendant. Id., 583. The plaintiffs did not petition for certification to appeal from that portion of the Appellate Court's decision.

Id., 583–84. This certified appeal followed as to the plaintiffs' manifest disregard claim. See footnote 1 of this opinion.

Our analysis is guided by well established principles regarding a party's application to vacate a consensual arbitration award resulting from an unrestricted submission. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy

. . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). This appeal is limited to the third ground for vacatur, namely, noncompliance with § 52-418.

"[Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."[7] (Internal quotation marks omitted.) Id., 81. "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties

---

[7] We have recognized two distinct grounds for vacatur under § 52-418 (a) (4): (1) the arbitrator manifestly disregarded the law; or (2) the award fails to conform to the submission. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85. We emphasize that *both* standards are encompassed within the statutory language of § 52-418 (a) (4); however, manifest disregard is the sole certified issue in the present case.

is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; internal quotation marks omitted.) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304–305, 680 A.2d 1274 (1996).

Therefore, "an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has 'exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' We emphasize, however, that the 'manifest disregard for the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles."[8] *Garrity* v. *McCaskey*, supra, 223 Conn. 10.

---

[8] The exceptionally high burden for proving a claim of manifest disregard of the law under § 52-418 (a) (4) is demonstrated by the fact that, since the test was first outlined in *Garrity*, this court has yet to conclude that an

On appeal, the plaintiffs claim that the arbitrator manifestly disregarded the law by awarding the defendant contract damages based on unsigned change orders.[9] The plaintiffs argue that the language of § 20-429 (a) mandates that all changes to a home improvement contract must be signed by both the owner and the contractor in order to be valid and enforceable; because five change orders were not signed by the owner,[10] any arbitration award based on those change orders was, therefore, made in manifest disregard of the law.[11] The

arbitrator manifestly disregarded the law. See generally *Alexson* v. *Foss*, 276 Conn. 599, 618, 887 A.2d 872 (2006) (affirming trial court's confirmation of arbitration award); *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 104–105 (same); *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation*, 273 Conn. 746, 758–59, 873 A.2d 155 (2005) (same); *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 96–97, 868 A.2d 47 (2005) (same); *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 311–12 (same); *Horn* v. *Maryland Casualty Co.*, 234 Conn. 408, 411, 661 A.2d 1032 (1995) (reversing trial court's vacatur of arbitration award); *Garrity* v. *McCaskey*, supra, 223 Conn. 13 (affirming trial court's confirmation of arbitration award).

[9] The plaintiffs' brief in this appeal also included claims that: (1) the Appellate Court improperly failed to address their claim that the arbitrator's award violated public policy; (2) the arbitrator disregarded the Home Improvement Act in violation of public policy; and (3) the arbitrator's alleged error in applying the Home Improvement Act "infected" his review of the plaintiffs' claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant filed a motion to strike the public policy and CUTPA sections of the plaintiffs' brief pursuant to Practice Book § 84-9, and this court granted the motion with respect to the first claim and portions of the second claim, but denied it with respect to the third claim. Because we conclude the arbitrator did not manifestly disregard the law in his award, we need not address whether his ruling on the CUTPA claim was negatively impacted by his resolution of the contract dispute.

[10] Again, we note that there were actually *six* unsigned change orders, but the plaintiffs do not dispute the validity of the unsigned change order crediting them $1430. See footnote 5 of this opinion.

[11] The plaintiffs specifically take issue with the arbitrator's award of $8482.06 for "upgrades & additional work not in contract," and with $13,903.48 of the total award to the defendant, which is the sum of the five change orders that the plaintiffs did not sign. The arbitrator's award does not list the total amount of the change orders as a separate element of the award.

defendant argues that the high standard of manifest disregard has not been met by the facts of this case. We agree with the defendant.

Although we ultimately reach the same conclusion as the Appellate Court, we elaborate on the correct application of the manifest disregard analysis, which is conjunctive and composed of three closely related elements. As set forth in *Garrity* v. *McCaskey*, supra, 223 Conn. 9, the first element, that "the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," and the third element, that "the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable," are particularly closely related. We therefore turn to a brief review of the law that the plaintiffs claim is applicable, specifically § 20-429 (a).

It is undisputed that the Home Improvement Act, and specifically § 20-429 (a), is the applicable law; it is not, however, well-defined. Section 20-429 (a) explicitly requires, inter alia, that a home improvement contract be in writing and signed by the owner and contractor in order to be valid or enforceable against an owner. Even if we were to assume, however, that the plain language of § 20-429 (a) requires change orders to be signed by both the owner and contractor,[12] that subsection can not be read by itself when evaluating the arbitrator's actions in the present case. "We construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation."

---

[12] For the purposes of this opinion, we assume, without deciding, that change orders are included in the last sentence of subsection (a) of § 20-429, which provides in relevant part: "Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor . . . ." It is not entirely clear from the statutory language, however, that a change order is per se a change to the terms and conditions of a contract, and we do not reach that conclusion in this case.

(Internal quotation marks omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 652, 817 A.2d 61 (2003). In particular, we note that subsection (a) of § 20-429 must be construed in conjunction with subsection (f), which the legislature added to the Home Improvement Act in 1993.[13] The legislature added subsection (f) to § 20-429 when it enacted No. 93-215, § 1, of the 1993 Public Acts, in order to address what it considered to be the harsh result of *Barrett Builders* v. *Miller*, 215 Conn. 316, 322–23, 576 A.2d 455 (1990), in which this court denied a contractor recovery for work performed because the court concluded that the Home Improvement Act was intended to abrogate common-law remedies, including quasi contract claims. See 36 S. Proc., Pt. 10, 1993 Sess., p. 3451, remarks of Senator Thomas F. Upson ("As you know, there was a Supreme Court decision that said if it wasn't in writing and value had been put in . . . the contractor could not get any money back at all. So this at least attempts to alleviate partially that situation."); 36 H.R. Proc., Pt. 16, 1993 Sess., p. 5611, remarks of Representative Thomas A. Fox, chairman of the general law committee (discussing *Barrett Builders* and stating that it is "somewhat unfair to require that each 'i' be dotted and 't' be crossed").

Subsection (f) of § 20-429 allows quantum meruit recovery in certain cases of partial noncompliance with subsection (a),[14] and could be construed as providing an

---

[13] General Statutes § 20-429 (f) provides: "Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery."

[14] The legislative history surrounding House Bill No. 7044, "An Act Concerning Recovery of Home Improvement Contractors," which became § 20-429 (f), indicates the amendment was intended to allow quantum meruit claims by contractors who had performed work and had not been paid, provided they satisfied the listed elements of § 20-429 (a). See 36 S. Proc., supra, p. 3448, remarks of Senator Thomas A. Colapietro (noting that amendment allows home improvement contractors to recover payments for reason-

adequate basis for the arbitrator's award in the present case, as the arbitrator may have chosen to exercise his discretion to allow a contractor to recover "payment for work performed based on the reasonable value of services which were requested by the owner, provided the [fact finder] determines that it would be inequitable to deny such recovery." General Statutes § 20-429 (f). We need not fully explicate the relationship between subsections (a) and (f) in the limited context of this review for manifest disregard; that § 20-429 (a) has not been the subject of an appellate level decision since the enactment of subsection (f),[15] and that a reasonable interpretation of § 20-429 supports the arbitrator's award, is enough to lead us to conclude that the applicable law is not well-defined and explicit. "The law allegedly ignored by the arbitration panel cannot be considered well defined, explicit, and clearly applicable . . . [if] the parameters of the . . . [applicable statute] have never been addressed by this court or the Appellate Court." (Citation omitted; internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 102–103.

Moreover, with respect to the second element of the test for vacating an arbitration award as a manifest disregard of the law, it is far from clear on the record of this case that the arbitrator "appreciated the existence of a clearly governing legal principle but decided to ignore it . . . ." *Saturn Construction Co.* v. *Premier*

able value of services provided); 36 H.R. Proc., supra, p. 5603, remarks of Representative John Fox ("[the bill] modifies the existing law to allow a contractor to recover on a theory of quantum meruit for what is reasonable and fair based upon the work that was done, if in fact, certain requirements but not all that are required, are met").

[15] This court did consider the requirements of § 20-429 (a) in *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 228–29, 720 A.2d 235 (1998), but the contract at issue in that case had been enacted prior to the enactment of Public Act 93-215, so the effect of § 20-429 (f) was not addressed in that case. Id., 228 n.10.

*Roofing Co.*, supra, 238 Conn. 305. The arbitration award stated only that "[t]he pursuant change orders *did not follow proper procedures* resulting in delays and disputes." (Emphasis added.) The plaintiffs contend that this statement, followed by the arbitrator's award to the defendant of payment for work contained only in the unsigned change orders, demonstrates that the arbitrator deliberately ignored the law. This language is, at best, ambiguous, and does not, without more, indicate that the arbitrator considered, but elected to ignore, governing legal principles. Put differently, we cannot tell from the award which "procedure" the arbitrator referred to, be it state statutes and regulations, or, for example, custom followed by the construction industry or these particular parties. Accordingly, the plaintiffs' claim of manifest disregard fails on the second element of the test as well. The Appellate Court, therefore, properly concluded that the trial court improperly vacated the arbitration award.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.