******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NXEGEN, LLC *v.* JOHN CARBONE
(AC 35954)

Lavine, Beach and Borden, Js.

*Argued October 22, 2014—officially released February 3, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Miller, J.)

*James G. Green*, *Jr.*, with whom, on the brief, was
*David W. Case*, for the appellant (defendant).

*Alexander J. Trembicki*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, John Carbone, appeals from the judgment of the trial court granting the application to confirm the arbitration award in favor of the plaintiff, Nxegen, LLC. The defendant claims that the trial court erred in determining that the arbitrator did not manifestly disregard the law in finding that the defendant maliciously misappropriated trade secrets and consequently awarding punitive damages to the plaintiff. We disagree and affirm the judgment of the trial court.

The following facts were found by the arbitrator. The defendant is the former chief operating officer of the plaintiff.[1] In 2001, the officers of the plaintiff, including the defendant, executed employment contracts and agreements with respect to intellectual property rights. The defendant's employment contract was for a term of one year and was automatically renewed for an additional year if neither party gave sixty days notice of intent to terminate the contract. The defendant held the titles of secretary and vice president of operations; he assumed the role of chief operating officer. In February, 2005, two businesses owned by Lynn Sutcliffe agreed to work with the plaintiff for the mutual benefit of all three companies. Sutcliffe became chief executive officer of each of the three companies. The defendant did not get along with Sutcliffe, to whom he technically reported, and he was unhappy with the direction in which the plaintiff's business was going. In 2006, the defendant renegotiated his employment contract. In exchange for an increase in his compensation, he agreed to stay with the plaintiff until May 24, 2008.

Meanwhile, in 2006, the plaintiff was awarded a $737,203 contract by the Board of Education of the City of Bridgeport (board) for phase I of a project encompassing energy efficiency upgrades in some of the board's facilities. After completion of phase I, the board asked the plaintiff to prepare a proposal for phase II of the project, which contemplated energy efficiency modifications for thirteen additional school facilities. The work required by phase II involved the use of more complex systems than those with which the plaintiff had previously worked. The defendant was in charge of the plaintiff's proposal for phase II, and he presented it to the board in July, 2007. The board approved the proposal at a meeting on August 27, 2007, and authorized the superintendent of schools to enter into a contract with the plaintiff for $2,304,000.

Two days later, at the plaintiff's regular sales meeting, the defendant failed to disclose fully the circumstances of the $2,304,000 project and, instead, reported that the phase II project had been held up because of personnel turnover. On September 6, 2007, the defendant announced his intention to resign from the plaintiff,

and he submitted his resignation on September 10, 2007, effective at the end of the month.

The arbitrator found that on September 14, 2007, the defendant provided the board's purchasing director "with his business card on which he deleted his . . . office phone number [at the plaintiff] and replaced it with his personal cell phone number." The defendant then met with the president of the plaintiff on September 27, 2007, to discuss the projects he had been working on. The defendant did not disclose to any of his supervisors at the plaintiff the size, nature, or dollar value of the phase II project proposal, or the fact that it had been approved. The defendant had expressed a willingness to consult for the plaintiff after he resigned, but the parties were unable to come to an agreement on a consulting arrangement, and those discussions concluded in November, 2007.

On December 12, 2007, the defendant formed his own company, Power Point Energy, LLC, which he owned solely. The defendant worked to secure the phase II contract for his new company. He secured utility incentives for the project in January, 2008. On April 9, 2008, the superintendent of schools entered into a contract to complete phase II with the defendant's company rather than with the plaintiff.[2] The defendant's company completed the project and was paid for it.

After the defendant resigned, the plaintiff discovered various breaches of his fiduciary duties; one such breach occurred in the context of his involvement with the phase II contract.[3] The plaintiff sought arbitration, per the defendant's employment contract, on November 20, 2009. Following the arbitration hearing, the parties submitted memoranda and reply memoranda, and the arbitrator issued an interim award on April 6, 2012. The arbitrator found that the defendant had wilfully and maliciously misappropriated the plaintiff's trade secrets in violation of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., by using work product developed while he was employed by the plaintiff to obtain the contract for his new company and that the defendant had breached his employment contract by resigning before his two year term was complete. The arbitrator also held that the defendant's actions clearly violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., but dismissed the claim as duplicative because no separate damages were recoverable.[4] Finally, the arbitrator found that the defendant had breached his fiduciary duty to the plaintiff by not disclosing the approval of the phase II contract to his superiors and for various unauthorized uses of funds while he was an employee.

The arbitrator awarded the plaintiff compensatory damages and held a second hearing to determine the amount of punitive damages, interest, costs, and attor-

ney's fees. The arbitrator subsequently issued the final award.[5] The arbitrator declined to reconsider his finding that the defendant's misappropriation of trade secrets was malicious, and awarded punitive damages[6] in the amount of $340,156. The arbitrator awarded a total of $1,031,356 in damages for the defendant's violation of CUTSA.[7]

The plaintiff applied to the trial court to confirm the arbitration award. The defendant objected to the application and filed an application to vacate the award in part. Specifically, the defendant objected to the punitive damages award, claiming that it was entered in "manifest disregard of the law." The plaintiff objected to the defendant's motion to vacate the award. The court granted the motion to confirm the arbitration award. This appeal followed.

The defendant claims here, as he did in the trial court, that the arbitrator awarded punitive damages in manifest disregard of the law. The defendant argues that the arbitrator understood that the standard to award punitive damages under CUTSA required the actions of the defendant to be both wilful and malicious, but ignored precedent as to what constitutes malice and decided the case under a different definition. We disagree.

"Our analysis is guided by well established principles regarding a party's application to vacate a consensual arbitration award resulting from an unrestricted submission. Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 305–306, 901 A.2d 1198 (2006).

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992). "The test [announced in *Garrity*] consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 305, 680 A.2d 1274 (1996).

In this case, the first two prongs of the *Garrity* test have not been satisfied. In the final award, the arbitrator properly acknowledged that the law required findings of malice and wilfulness if punitive damages were to be awarded. He set forth the reasons he found malice in the defendant's conduct: "[The defendant] is correct that the statute requires a finding of both a 'wilful' and a 'malicious' violation. Although there was not the type of evidence showing malice as in *Elm City Cheese* [*Co.*] v. *Federico*, 251 Conn. 59, [752 A.2d 1037] (1999) . . . there was sufficient evidence to warrant the finding of malice in this case. [The defendant] did not like . . . Sutcliffe's management style or vision for [the plaintiff]. Based on [the defendant's] numerous violations of his fiduciary duty to [the plaintiff], the finding is warranted [in] that his conduct in stealing [the plaintiff's] trade secrets was motivated by [the defendant's] ill will towards . . . Sutcliffe and his desire to harm [the plaintiff]." The court properly found, as to the first and second prongs of the *Garrity* test, that the defendant's contention that the arbitrator consciously ignored the

law was not supported by the record, nor was the defendant's contention that the arbitrator committed an obvious error.

The defendant argues in his brief to this court that the second and third prongs of the *Garrity* test were satisfied because the law is clear and the arbitrator appreciated the law but decided to ignore it. Regardless of whether the law is clear and well-defined, there is nothing in the record to compel the conclusion that the arbitrator consciously disregarded the law (second prong) or that any alleged error was obvious (first prong). The defendant argues that the arbitrator's reference to *Elm City Cheese Co.*, and his recognition that *Elm City Cheese Co.* and the present case do not present identical situations, lead to the conclusion that the arbitrator consciously disregarded the law in awarding punitive damages. As did the trial court, we consider the arbitrator's findings to suggest only that the factual situation in *Elm City Cheese Co.* was different from the present case, and not that the arbitrator applied an unauthorized standard in finding malice. Whether the arbitrator correctly found malice is not for us to decide. See *Economos* v. *Liljedahl Bros., Inc.*, supra, 279 Conn. 305. We decide only that the arbitrator's finding of malicious misappropriation and award of punitive damages in this case does not "so egregiously depart from established law that [it] border[s] on the irrational [such that judicial approval thereof] would undermine society's confidence in the legitimacy of the arbitration process." *Garrity* v. *McCaskey*, supra, 223 Conn. 10. The defendant failed to prove that the *Garrity* test was satisfied because there was no obvious error, and the record did not show that the arbitrator deliberately ignored the law. Therefore, there is no error in the trial court's conclusion that the arbitrator did not run afoul of § 52-418 (a) (4).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was one of four founding members of Energy Solutions, LLC, which was the predecessor to the plaintiff. In 1999, Energy Solutions, LLC, was reorganized as Nxegen, Inc., following an investment of capital by and the involvement of new investors. In January, 2005, the relevant assets of Nxegen, Inc., were transferred to the plaintiff. For simplicity, we refer to these entities collectively as the plaintiff.

[2] The evidence was unclear how the defendant managed to obtain the contract for his new company because the defendant's company never obtained a "qualification to bid," never bid on the work, and the board never authorized the execution of the contract with anyone other than the plaintiff.

[3] The president of the plaintiff learned of the defendant's involvement in the phase II project when an employee of the board called to complain about the condition of its premises.

[4] The arbitrator dismissed five of the eight counts. The arbitrator found the plaintiff's claim that the defendant breached his employment agreement by using the plaintiff's proprietary information was duplicative of the CUTSA claim and therefore dismissed it. The arbitrator dismissed the other four claims because he found that the request for an injunction prohibiting the defendant from breaching the employment agreement was moot, that there was insufficient evidence to sustain claims of tortious interference with the plaintiff's contractual or business relationships, and that the noncompete clause in the parties' agreement was unenforceable.

[5] The arbitrator also issued an amended award to correct a computational error as to the amount of fees and costs.

[6] General Statutes § 35-53 (b) provides in relevant part: "[I]f the court finds wilful and malicious misappropriation, the court may award punitive damages . . . ."

[7] In the final, amended award, the arbitrator awarded compensatory damages in the amounts of $691,200 for the breach of CUTSA, $36,850 for the breaches of fiduciary duty, and $129,211.44 for the breach of contract, as well as an award of attorney's fees, expert witness fees, and costs in the amount of $204,324.13 pursuant to the breach of contract claim.

———————————————————