******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PAUL IPPOLITO ET AL. *v.* OLYMPIC
CONSTRUCTION, LLC
(AC 37437)

Alvord, Sheldon and Mullins, Js.

*Argued December 9, 2015—officially released March 1, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. David R. Tobin, judge trial

referee.)

*Joseph DaSilva, Jr.*, with whom, on the brief, was *Marc J. Grenier*, for the appellants (plaintiffs).

*Thomas M. Cassone*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiff homeowners, Paul Ippolito and Lisa Ippolito, appeal from the judgment of the trial court, *Hon. David R. Tobin*, judge trial referee, denying their motion to vacate an arbitration award in favor of their home improvement contractor, defendant Olympic Construction, LLC, and granting the defendant's motion to confirm that award. The arbitration involved a claim by the defendant for lost profits for work repairing water damage to the plaintiffs' home, which it was not permitted to complete under the terms of their home improvement contract due to the plaintiffs' alleged termination of that contract without just cause. The plaintiffs claim that the trial court erred in confirming the arbitrator's award of lost profit damages to the defendant because the contract did not comply with certain provisions of the Home Improvement Act (HIA), General Statutes § 20-418 et seq. In particular, the plaintiffs argue that the contract did not comply with General Statutes § 20-429 (a) (6), which requires that every home improvement contract contain a notice of the homeowner's right to cancel the contract in accordance with the provisions of the Home Solicitation Sales Act (HSSA), General Statutes §§ 42-134 through 42-143, or with § 20-429 (a) (7), which requires that each such contract contain a starting date and completion date.[1] The plaintiffs claim that the arbitrator's award of damages to a contractor for work he agreed to perform under a home improvement contract that is noncompliant with the HIA violated the clear public policy of this state and demonstrated a manifest disregard of the law. We affirm the judgment of the trial court confirming the arbitration award.

The following facts are relevant to this appeal. The plaintiffs, owners of a residential property located at 131 Pequot Lane in New Canaan, suffered water damage at their home following a storm. As a result, the plaintiffs entered into a contract with the defendant to repair the damage. That contract, dated May 26, 2011, consisted of an American Institute of Architects (AIA) Standard Form A133–2009 and several other documents, which were incorporated therein by reference, including AIA Document A201–2007, General Conditions of the Contract for Construction. The contract provides that all disputes between them arising out of or related to the contract will be subject to arbitration before an arbitrator from the American Arbitration Association in accordance with the association's Construction Industry Arbitration Rules.

During the course of repairs, another storm caused more water damage to the plaintiffs' home, prompting Paul Ippolito to terminate the parties' contract before the defendant could complete the agreed upon work. The defendant then filed a claim for arbitration, seeking to recover lost profits for work it had agreed to perform

under the contract but had not been allowed to complete.

The plaintiffs defended themselves in the arbitration by arguing that the contract was void for noncompliance with the HIA, and thus that it was unenforceable against them by the defendant, because it failed to give them proper statutory notice of their cancellation rights under the contract, and failed to include a starting date and completion date for the work to be performed thereunder. The arbitrator rejected the plaintiffs' defense, found that Paul Ippolito's termination of the contract had not been for cause, and thus awarded the defendant $46,448.19 in lost profits for the plaintiffs' breach of contract.

After the arbitration, the plaintiffs moved to vacate the arbitration award in the Stamford Superior Court pursuant to General Statutes § 52-418 (a),[2] and the defendant moved to confirm the award pursuant to General Statutes § 52-417.[3] The plaintiffs claimed that the award violated the clear public policy of this state because it contravened the previously described provisions of the HIA, and that the arbitrator, by not strictly enforcing those statutory provisions, had manifestly disregarded the law. The trial court rejected the plaintiffs' claims, and thus denied their motion to vacate and granted the defendant's motion to confirm the arbitrator's award. This appeal followed.

"Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, we

have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 305–306, 901 A.2d 1198 (2006). The plaintiffs challenge the award for violation of public policy and for contravention of § 52-418 on the ground that, in issuing the award, the arbitrator manifestly disregarded the law.

I

We first address the plaintiffs' claim that the arbitrator's award violates the clear public policy of this state because it enforces against a homeowner, on a claim for damages by a contractor, a home improvement contract that does not comply with the HIA. The plaintiffs argue, more particularly, that the location of the cancellation notice within the contract does not comply with § 20-429 (a) (6), and that the contract does not contain a starting date and completion date, as required by § 20-429 (a) (7).

We begin by setting forth our standard of review. "[W]e favor arbitration as a means of settling private disputes, [thus] we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . We will, however, submit to higher scrutiny an arbitration award that is claimed to be in contravention of public policy. . . . [P]arties cannot expect an arbitration award approving conduct which is . . . contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award.* . . .

"Thus, when a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy. . . . As this court maintained in [*State* v. *AFSCME, Council 4, Local 391*, 309 Conn. 519, 528, 69 A.3d 927 (2013)], we defer to the arbitrator's interpretation of the agreements regarding the scope of the [contract] provision . . . . We conclude only that as a reviewing court, we must determine, pursuant to our plenary authority and giving appropriate deference to the arbitrator's factual conclusions, whether the contract provision in question violates those policies. . . .

"To determine whether an arbitration award must be

vacated for violating public policy, we employ a two-pronged analysis. . . . First, we must determine whether the award implicates any explicit, well-defined, and dominant public policy. . . . To identify the existence of a public policy, we look to statutes, regulations, administrative decisions, and case law. . . . Second, if the decision of the arbitrator does implicate a clearly defined public policy, we then determine whether the contract, as construed by the arbitration award, violates that policy." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 316 Conn. 618, 629–31, 114 A.3d 144 (2015) (*Burr Road*). "Our case law . . . has emphasized, however, that a reviewing court still is bound by the arbitrator's factual findings in making such a determination." *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 837, 6 A.3d 1142 (2010).

The plaintiffs claim that the arbitrator's award violates public policy because the contract is noncompliant with two sections of the HIA: (1) § 20-429 (a) (6), which requires that home improvement contracts include a notice of the homeowner's cancellation rights in accordance with the provisions of the HSSA; and (2) § 20-429 (a) (7), which requires that a home improvement contract contain a starting date and completion date. The plaintiffs argue that, "[t]o enforce a noncompliant home improvement contract is contrary to the public policy of the state of Connecticut, and thus, said noncompliance compels the concomitant conclusion that the award itself violates the public policy of the state of Connecticut and it must therefore be vacated." The defendant responds that strict enforcement of the HIA is not a well-defined, explicit, and dominant public policy of this state.

A

We first turn to the plaintiffs' claim that the contract violates public policy because it does not comply with the notice of cancellation requirements of the HIA under § 20-429 (a) (6), which requires that a home improvement contract include notice of the homeowner's cancellation rights in accordance with the provisions of the HSSA. The plaintiffs do not dispute that the parties' contract contains a notice of their cancellation rights, nor do they argue that the language or typeface of that cancellation notice is in any way deficient. Instead, they argue that the location of the notice within the contract documents does not comply with General Statutes § 42-135a (1) and (2) of the HSSA.

Section 42-135a (1) of the HSSA requires, inter alia, that the seller include a cancellation notice "in immediate proximity to the space reserved in the contract for the signature of the buyer . . . ."[4] Section 42-135a (2) of the HSSA, in turn, requires that the seller provide the

buyer with "a completed form in duplicate, captioned 'NOTICE OF CANCELLATION', which shall be attached to the contract . . . and easily detachable . . . ."[5] The plaintiffs argue that the cancellation notice in the contract here at issue does not comply with the foregoing requirements because it is "buried" on pages thirty-eight and thirty-nine of a thirty-nine page document separate from the contract, entitled AIA Document A201–2007, General Conditions of the Contract for Construction.

The plaintiffs initially argued before the arbitrator that the contract did not contain any notice of cancellation rights, but the arbitrator disagreed, finding as follows: "The [plaintiffs] claim . . . that the contract failed to contain a notice of cancellation rights. This claim does not hold up. The contract, in section 12.2, directly above Mr. Ippolito's signature, states that the contract includes AIA document A201–2007, General Conditions of the Contract for Construction. On pages 38–39 of that document is the notice of cancellation, which states explicitly that the Owner may cancel the contract 'without any penalty or obligation'. The effectiveness of this inclusion is not affected by the fact that the date of the notice was changed from June 6 to June 10 and the date of the notice limit was changed from June 9 to June 13. The contract clearly does contain the notice of cancellation rights required by the [HIA]."

The plaintiffs argued in the trial court, however, as they do before this court, that even if the contract did contain a cancellation notice, its location in the contract was improper. The trial court concluded that the award did not violate a clear public policy because the plaintiffs were unable to produce any case law holding that a defect in the location of the notice of cancellation, absent any other defect, was fatal.

Although the plaintiffs argued in the trial court that the contract violated § 42-135a (2), the trial court's decision did not reference that claim and was based solely on the portion of § 42-135a (1) that requires a seller to include a cancellation notice "in immediate proximity to the space reserved in the contract for the signature of the buyer." The plaintiffs never filed a request for articulation to receive a ruling on their claim under § 42-135a (2). Moreover, the plaintiffs have failed to adequately brief their claim as to § 42-135a (2) by failing to set forth how the contract here at issue violates that subdivision. Thus, we decline to review the plaintiffs' claim to the extent that it asserts a violation of that subdivision.[6]

Our first step is to "determine whether the award implicates any explicit, well-defined, and dominant public policy." *Burr Road*, supra, 316 Conn. 630. We conclude that the arbitration award, insofar as it rejects the plaintiffs' challenge to the contract's notice of cancellation, does not "[implicate] any explicit, well-

defined, and dominant public policy." Id. Although our Supreme Court has recognized that compliance with § 20-429 (a) is mandatory, it has not required perfect compliance. *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 230–31, 720 A.2d 235 (1998). "The HIA is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services. . . . While the purposes of the statute are advanced by an interpretation that makes compliance with the requirements of § 20-429 (a) mandatory, it does not necessarily follow that advancement of the purposes also requires that the mandatory compliance with each subsection be technically perfect." (Citations omitted.) Id., 231.

In *Dowling*, our Supreme Court concluded that it would be inappropriate to require "technically perfect compliance" with § 20-429 (a), and instead required "an interpretation of that section that acknowledges and furthers the remedial purposes of the statute . . . ." Id. The plaintiff contractor in that case sought to foreclose a mechanic's lien after the defendant homeowners had failed to submit complete payment for renovations that the plaintiff had completed on their home. Id., 223–24. The defendants claimed that their contract did not comply with the HIA because the plaintiff: (1) had not attached two copies of the notice of cancellation to it, in violation of § 42-135a (2); see footnote 5 of this opinion; and (2) had not entered the date of the transaction or the date by which the transaction could be cancelled on the notice of cancellation, in violation of § 42-135a (3).[7] Id., 226. The court in *Dowling* disagreed, noting first that, although the plaintiff had supplied only one copy of the cancellation notice to the homeowner, it had supplied another copy to the homeowner's husband, who was then acting as her agent. Id., 232. Second, it noted that, even though there were no dates on the cancellation notice, "[t]he missing information . . . easily could have been gleaned from even the most cursory review of the contract." Id., 233. Therefore, the court concluded that "the alleged deviations . . . were of a minor and highly technical nature, and did not result in a lack of notice to the defendants that they had a right to cancel the contract within three days of the contract's signing." Id., 232. Accordingly, when a minor or technical defect in the cancellation notice of a home improvement contract does not result in a lack of notice to the homeowners of their right to cancel the contract within three days of the contract's signing, an arbitrator's award enforcing the contract against the homeowners cannot be found to violate an "explicit,

well-defined, and dominant public policy"; *Burr Road*, supra, 316 Conn. 630; of this state.

The arbitrator in this case found that the cancellation notice complied in substance with the requirements of the HIA, because, even though it was set forth on pages thirty-eight and thirty-nine of a separate document that had been incorporated into the contract by reference, the incorporated document itself was referenced in close proximity to the signature line on the contract. Here, then, because the plaintiffs have not demonstrated that the cancellation notice was missing from the contract, or that the language or typeface or any other aspect of the cancellation notice was deficient in such a way as to deprive them of notice of their cancellation rights under the HIA, we cannot conclude that enforcement of the contract against the homeowners violated an explicit, well-defined and dominant public policy of this state.

B

We turn next to the plaintiffs' claim regarding § 20-429 (a) (7), which provides that: "No home improvement contract shall be valid or enforceable against an owner unless it . . . (7) contains a starting date and completion date . . . ." The plaintiffs claim that the contract does not comply with that provision because it does not contain specific calendar dates for starting and completing work under the contract.

The arbitrator made the following findings as to the starting date and completion date of work to be performed under the parties' contract: "The . . . claim . . . that the contract does not include a start date and a completion date . . . fails. The General Conditions state in section 8.1.2: '[t]he date of commencement of the Work is the date established in the agreement.' Section 2.3.1.1 of the agreement states: 'For purposes of Section 8.1.2 of A201–2007, the date of commencement of the Work shall mean the date of commencement of the Construction Phase.' In the following section 2.3.1.2, it states, 'The Construction Phase shall commence upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal or the Owner's issuance of a Notice to Proceed, whichever occurs earlier.' The completion date for the contract is defined in Section 9.8 of the General Conditions.[8] In this matter, the start dates and the completion date can be readily adduced by looking at the entire contract . . . ." (Citation omitted; footnote added.)

The trial court thus rejected the plaintiffs' claim that the contract violated the starting date and completion date requirement of the HIA, and with it the claim that enforcement of that contract against them violated an explicit, well-defined, and dominant public policy of this state. On that score, the court expressly noted that the plaintiffs could not provide any case law that held

that "the starting date and/or completion date need to be fixed calendar dates rather than dates to be determined upon the occurrence of certain events. (E.g., the completion of plans; issuance of a building permit; notification of closing on construction financing.)"

The plaintiffs again claim on appeal that enforcement against them of a home improvement contract that is noncompliant with the starting date and completion date requirement of the HIA violates public policy. We are bound by the arbitrator's factual findings; *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 298 Conn. 837; including the finding that "the start date and the completion date can be readily adduced by looking at the entire contract." On the basis of those findings, the arbitrator concluded that the parties' contract was compliant with the HIA requirement that it contain a starting date and completion date. Accordingly, the plaintiffs' claim on appeal fails, for even if strict enforcement of the starting date and completion date requirement of the statute were an explicit, well-defined, and dominant public policy of this state, the contract here at issue does not violate that requirement or the public policy it is designed to promote.

II

The plaintiffs next claim that the arbitrator's enforcement of a contract that is noncompliant with § 20-429 (a) (6) and (7) of the HIA demonstrates a manifest disregard of the law, and thus that the award should be set aside pursuant to § 52-418 (a) (4).

"[Section] 52-418 (a) (4) provides that an arbitration award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . . [A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of

good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, supra, 279 Conn. 306–307.

The plaintiffs argue that the contract does not comply strictly with the HIA and the HSSA, and that mandatory strict compliance with the HIA and the HSSA is a well-defined, explicit, and clearly applicable law. Moreover, the plaintiffs argue that the arbitrator recognized the existence of the requirements of § 20-429 (a) (6) and (7), but ignored those provisions.

The arbitrator found that the notice of cancellation in the contract here at issue deviated from the strict requirements of the HIA in only a minor and technical manner, and concluded that the contract complied fully with the HIA's requirement that the contract contain a starting date and completion date. As for the latter determination, it completely undermines the plaintiffs' claim that by enforcing a contract that failed to contain a starting and completion date, the arbitrator issued his award in manifest disregard of the law. The relevant provisions of the HIA simply were not violated at all. As for the former determination, although the court determined that the location of the cancellation notice in the parties' contract constituted a minor and technical deviation from the requirements of the HIA, we already have determined that no such deviation required the nonenforcement of the contract unless it was shown to have deprived the plaintiffs of notice of their statutory cancellation rights under the contract. By failing to plead and prove such a deprivation of notice of their statutory cancellation rights as a result of the minor and technical deviation here at issue, the plaintiffs have failed to prove that the arbitrator ignored the requirements of a well-defined, explicit, and clearly applicable law, or that he thereby demonstrated an "extraordinary lack of fidelity to established legal prin-

ciples"; (internal quotation marks omitted.) id., 306; as required to establish a manifest disregard of the law within the meaning of § 52-418 (a) (4).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 20-429 (a) provides: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, (8) is entered into by a registered salesman or registered contractor, and (9) includes a provision disclosing each corporation, limited liability company, partnership, sole proprietorship or other legal entity, which is or has been a home improvement contractor pursuant to the provisions of this chapter or a new home construction contractor pursuant to the provisions of chapter 399a, in which the owner or owners of the home improvement contractor are or have been a shareholder, member, partner, or owner during the previous five years. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor."

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[4] General Statutes § 42-135a provides: "No agreement in a home solicitation sale shall be effective against the buyer if it is not signed and dated by the buyer or if the seller shall: (1) Fail to furnish the buyer with a fully completed receipt or copy of all contracts and documents pertaining to such sale at the time of its execution, which contract shall be in the same language as that principally used in the oral sales presentation and which shall show the date of the transaction and shall contain the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer, or on the front page of the receipt if a contract is not used, and in boldface type of a minimum size of ten points, a statement in substantially the following form:

'YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.' "

[5] General Statutes § 42-135a provides: "No agreement in a home solicitation sale shall be effective against the buyer if it is not signed and dated by the buyer or if the seller shall (2) Fail to furnish each buyer, at the time such buyer signs the home solicitation sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in

duplicate, captioned 'NOTICE OF CANCELLATION', which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point boldface type the following information and statements in the same language as that used in the contract:

'NOTICE OF CANCELLATION

. . . . (Date of Transaction)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO . . . . (Name of Seller) AT . . . . (Address of Seller's Place of Business) NOT LATER THAN MIDNIGHT OF . . . . (Date)

I HEREBY CANCEL THIS TRANSACTION

. . . . (Date)

. . . . (Buyer's Signature)' "

[6] We are aware that Practice Book § 61-10 was recently amended to include subsection (b), which provides in relevant part that "[t]he failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal. . . ." The commentary for § 61-10 provides, however, that "[t]he adoption of subsection (b) is not intended to preclude the court from declining to review an issue where the record is inadequate for reasons other than solely the failure to seek an articulation . . . ."

[7] General Statutes § 42-135a provides in relevant part: "No agreement in a home solicitation sale shall be effective against the buyer if it is not signed and dated by the buyer or if the seller shall . . . (3) Fail, before furnishing copies of the 'Notice of Cancellation' to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation."

[8] Section 9.8.1 of the General Conditions of the contract states: "Substantial Completion is the stage in the process of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use."

———————————————