******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AFSCME, COUNCIL 4, LOCAL 2663 *v.* DEPARTMENT
OF CHILDREN AND FAMILIES ET AL.
(SC 19166)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Robinson, Js.

Argued December 11, 2014—officially released June 23, 2015

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellant (plaintiff).

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Philip M. Schulz*, assistant attorney general, for the appellee (named defendant).

*Opinion*

McDONALD, J. A broadly phrased, unrestricted submission to arbitration may yield unanticipated results, as this case aptly demonstrates. In the underlying arbitration proceeding, the arbitrator found that the named defendant, the Department of Children and Families (department),[1] had failed to establish that a department employee, Suzanne Listro, had inflicted the fatal abuse on her foster child that the department claimed provided just cause for termination of her employment. The arbitrator nonetheless found that Listro's own version of events demonstrated negligence that established just cause for termination. In this certified appeal, Listro's union, the plaintiff, AFSCME, Council 4, Local 2663 (union), appeals from the judgment of the Appellate Court reversing the trial court's judgment granting the union's application to vacate the arbitration award. The union claims that vacatur of the arbitration award was proper because the arbitrator exceeded her authority and violated the employee's contractual and due process rights to notice by relying on a different theory than the one advanced by the department. Upon application of the requisite limited scope of review of arbitration awards, we conclude that the award conformed to the parties' unrestricted submission and drew its essence from the terms of the parties' collective bargaining agreement. We further conclude that notice requirements were satisfied. Accordingly, we affirm the judgment of the Appellate Court.

This case arises in the context of the following facts, as found by the arbitrator, and procedural history. The union is the collective bargaining unit for the department's social workers. At the time of the incident at issue, Listro had been employed as a social worker by the department for twelve of the preceding fifteen years, having served in various capacities, including as a case worker, hot line worker, and child services consultant. In 2008, she was working in the department's mentor program, where she was responsible for recruiting community volunteers to mentor adolescent girls living in state facilities and for running programs for mentors and mentees.

On May 12, 2008, Listro became the foster parent of a seven month old boy, M,[2] after he had been returned to the department by another foster family who claimed that he was inconsolable and too fussy for them to handle. One week later, Listro called 911 reporting that M was limp and unresponsive. Emergency responders took M to the hospital, where he was later pronounced dead. Shortly thereafter, Listro gave a statement to police indicating that M had fallen off her bed onto the floor immediately before he became unresponsive.

A state medical examiner issued an autopsy report wherein he concluded that M's cause of death was blunt

traumatic head injury and the means of death was homicide. According to the medical examiner, the physical signs found on M's body were not consistent with death from a fall, but rather a condition commonly known as shaken baby syndrome. This diagnosis was evidenced by the fact that M's retinas had hemorrhaged. The medical examiner also determined that, if M had hit his head, the autopsy should have revealed pooled blood under his scalp, but no such pooling had been found. As a result of the medical examiner's report, Listro was arrested and charged with manslaughter in the first degree; General Statutes § 53a-55; and risk of injury to a child. General Statutes § 53-21.

The department took two actions in response to these events. First, the department's special investigations unit concluded that a charge of abuse and/or neglect had been substantiated and recommended Listro's placement on the department's central registry of persons deemed to pose a risk to the safety and well-being of children (central registry). See General Statutes § 17a-101g; see also General Statutes § 17a-101k. Listro chose not to challenge that decision in an administrative hearing because her attorney advised her not to provide testimony in another forum while her criminal charges were pending.

Second, the department opened a human resources investigation to determine whether employment discipline was warranted in light of these events. In connection with this action, which is the subject of the present appeal, the department sent Listro a letter informing her that an investigatory meeting was set to "discuss [her] serious off-duty misconduct that has [led] to [her] arrest" and that "[t]he maximum level of discipline . . . being considered is dismissal." At the investigatory interview, on advice of counsel, Listro declined to answer any questions about the incident while her criminal charges were pending. At the conclusion of the investigatory interview, the department provided Listro with an opportunity to make a statement regarding the incident at issue, in accordance with the dictates of *Board of Education* v. *Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985),[3] but, again, on advice of counsel, Listro declined to do so.

Following the *Loudermill* hearing, the department sent Listro a letter notifying her that it was dismissing her for just cause in accordance with the collective bargaining agreement and administrative regulations. The letter indicated that "this action is taken immediately due to your serious misconduct which affects the public, the safety and welfare of our clients," and cited as pertinent facts that: "[o]n May 19, 2008, [M] died while in [Listro's] care"; Listro's arrest warrant "indicates that [Listro] provided a statement reporting that the child had fallen from the bed when [Listro] left him unattended"; and the medical examiner had deemed

the injury to M inconsistent with a fall. The letter stated that Listro's actions violated § 5-240-1a (c) (4) and (13) of the Regulations of Connecticut State Agencies, respectively, "[o]ffensive or abusive conduct toward the public, co-workers, or inmates, patients or clients of [s]tate institutions or facilities" and "[e]ngaging in any activity which is detrimental to the best interests of the agency or of the state."

Listro was later acquitted of the criminal charges, but a civil action was filed against Listro and the department by M's biological parents.

The union filed a grievance on Listro's behalf, challenging her termination, after which the parties proceeded to arbitration. The union and the department stipulated to the submission of the following issues to the arbitrator: (1) "Did the [department] have just cause to dismiss . . . Listro?" and (2) "If not, what shall be the remedy consistent with the terms of the collective bargaining agreement?" In the arbitration proceeding, the department proceeded on the theory that Listro had inflicted the fatal injuries on M. It relied principally on the testimony of the medical examiner, Listro's arrest affidavit, and Listro's placement on the department's central registry to establish just cause for her termination.[4]

Listro testified before the arbitrator to offer her account of the circumstances leading to M's death. According to her testimony, on the evening of May 19, 2008, Listro placed M on the corner of her king-size bed while she changed his diaper. After she finished changing his diaper, Listro turned around and stepped away to shut off the television and the videocassette recorder (VCR) located on the wall opposite the bed. While her back was turned, she heard a thud and turned around to see that M had fallen off the bed and onto the linoleum tiled floor. M started to cry and, after Listro picked him up, he became limp and unresponsive. She thereafter called 911 and administered rescue breaths while she awaited the ambulance.

Relying on Listro's testimony, the union argued that the department had failed to prove that Listro caused M's death and therefore that it had just cause to terminate her. It conceded that Listro's testimony and the autopsy findings were inconsistent, but argued that the fact that M's death had been caused by shaken baby syndrome did not necessarily suggest that a crime had been committed or, if one had been, that Listro was the perpetrator. The union pointed to the fact that other individuals had the opportunity to injure M and that the state failed to provide medical testimony regarding the window of time in which the fatal injuries may have occurred. The union also argued that there was no nexus between the incident at issue and Listro's role as a mentor for adolescents to justify termination. The union asserted that Listro's discharge was merely a

political response to protect the department from liability.

The department, however, maintained that it had the right to discipline Listro for off duty misconduct and that her misconduct constituted just cause for termination. The department contended that the nexus to Listro's job was established by the connection between Listro's misconduct and the department's mission to protect children. With respect to just cause, the department argued that Listro's acquittal of the criminal charges was irrelevant in light of the different burdens of proof in the two forums and that Listro's account was not credible in light of the medical evidence.

The arbitrator issued a lengthy memorandum of decision, wherein she denied Listro's grievance. The arbitrator first agreed with the department that Listro's off duty conduct could provide a proper basis for discipline, but she disagreed that the department had produced sufficient evidence in support of its theory that Listro caused M's fatal injuries. With respect to a nexus between Listro's off duty conduct and her job responsibilities, the arbitrator pointed to the fact that "[the department] in general and social workers in particular are charged with the safety of children in their care; an employee's actions off the job . . . cannot be divorced from that responsibility and the public trust necessary to accomplish the [d]epartment's task." With respect to the department's theory of the case, the arbitrator found that the department did not "carry its burden of establishing that . . . Listro committed the fatal abuse of which she was accused." The arbitrator noted that the department had failed to establish that no other person could have committed the abuse, for instance, M's biological parents or his prior foster family. The arbitrator recognized that the medical evidence "conclusively establishe[d] that M was a victim of shaken baby syndrome," but she explained: "If M fell as asserted by . . . Listro . . . nothing in the record establishes that such a fall could not have been the proverbial 'last straw' for earlier traumatic injuries. Although the autopsy revealed no external bruising, there is also no evidence that a fall from two feet would cause such bruising in a seven month old baby. Moreover, there was no evidence regarding how much time could elapse between a severe shaking and such a fall in order for the fall to result in death shortly thereafter." (Footnote omitted.) The arbitrator opined: "As with many tragic events, it is more than likely that the true story will never be known by anyone other than . . . Listro."

Despite rejecting the department's theory, the arbitrator went on to explain: "[Listro's] problems do not end there, however. Even if we accept her story in its totality, there is no doubt that she was negligent in her care of M: her inattention permitted him to fall from the bed

that night. Although this represents a lapse in judgment with which many parents are familiar . . . Listro's moment of negligence had unusually serious consequences, the death of a child. . . . Unfortunately, as an employee of a public welfare agency, her employment status is a further casualty of that event. Given the totality of the circumstances, I conclude that [Listro's] actions—despite being off duty—made her unemployable by the government agency responsible for the care and welfare of children." The arbitrator therefore issued an award concluding that there was just cause for Listro's termination.

The union thereafter filed an application in the Superior Court seeking to vacate the arbitrator's award pursuant to General Statutes § 52-418 (a) (4), and the department filed a cross application to confirm the award pursuant to General Statutes § 52-417. The trial court granted the union's application and denied the department's application. In its summary order, the trial court concluded: "The arbitrator exceeded her authority in using negligence as a standard and basis for her award. The charge of negligence was never made by the department at the [*Loudermill*] hearing or in the termination letter sent to [Listro]."

The department appealed from the judgment to the Appellate Court, arguing that the trial court improperly vacated the award. The Appellate Court agreed, concluding that "negligence arguably came within the purview of the [collective bargaining] agreement and was an appropriate term for the arbitrator to use to describe Listro's conduct, which was the basis of her dismissal for just cause." *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 142 Conn. App. 1, 10, 62 A.3d 1168 (2013). The court also concluded that it was not necessary for negligence to be cited as the reason for Listro's termination during the *Loudermill* hearing or in the termination letter because both the hearing and the letter "clearly identified her behavior and the events that constituted the serious off duty misconduct at issue." Id., 13. The Appellate Court determined that the trial court's contrary conclusion "exceeded the standards of review applicable to arbitration awards" and, therefore, reversed the judgment of the trial court and remanded the case with direction to confirm the award. Id., 14. The union's certified appeal to this court followed. See *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 309 Conn. 915, 70 A.3d 38 (2013).

Before this court, the union makes a series of interrelated arguments in support of an overarching claim that, contrary to the Appellate Court's conclusion, the arbitrator exceeded her powers.[5] Specifically, the union contends that: (1) the arbitrator disregarded her own factual findings, principal among which was that the department had failed to establish that Listro "committed the fatal abuse of which she was accused"; (2) the

arbitrator dispensed her own brand of industrial justice by formulating her own charge of negligence against Listro; (3) the award is inherently inconsistent with the parties' collective bargaining agreement; and (4) the award does not draw its essence from the collective bargaining agreement.[6] The union also argues that, because the department never characterized Listro's misconduct as negligent, the arbitrator's reliance on negligence as the theory under which the department had just cause to terminate Listro amounted to a violation of due process and the notice provisions of the parties' collective bargaining agreement. Because of the constrained standard of review that we must apply in arbitration cases, we disagree that the union is entitled to relief on the basis of any of these claims.

The propriety of arbitration awards often turns on the unique standard of review and legal principles applied to decisions rendered in this forum. "Judicial review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005). "When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement." (Internal quotation marks omitted.) Id. "Parties to an arbitration may make a restricted or an unrestricted submission." *United Electrical Radio & Machine Workers of America Local 235* v. *Union Mfg. Co.*, 145 Conn. 285, 287, 141 A.2d 479 (1958).

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80; see also *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 294, 377 A.2d 323 (1977) ("[b]y agreeing to the unlimited submission in this case, the [parties] authorized the arbitrator to exercise his own judgment and discretion and to render an appropriate award"). "A submission is deemed restricted only if the agreement contains express language restricting the breadth of

issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519, 710 A.2d 1343 (1998); see also *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 111–12, 779 A.2d 737 (2001) (mere fact that parties asked arbitrator to decide particular question does not render submission restricted, in absence of conditions on arbitrator's final resolution of that matter).

Although it took a different position in the proceedings below and in its brief to this court, the union conceded at oral argument before this court that the submission in this case was unrestricted. Thus, this court cannot review the factual or legal merits of the underlying decision.

Even in the case of an unrestricted submission, however, a reviewing court will vacate an award when an arbitrator has exceeded the power granted to her by the parties' submission. *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 114; see also General Statutes § 52-418 (a) (4) (award shall be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made"). "[A] claim that the arbitrators have exceeded their powers may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85. Although not expressly stated as such, the union's claims in the present case fall under the first category.[7]

In considering whether the arbitrator exceeded her powers on that basis, a reviewing court's inquiry is "limited to a comparison of the award to the submission."[8] Id.; see also *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 755, 980 A.2d 297 (2009) ("[o]ur inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred" [internal quotation marks omitted]). "[A] court cannot base the decision [regarding whether an arbitrator has exceeded her authority] on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided." *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 755.

Because the arbitrator is required to consider the

submission in light of the parties' agreement, "the arbitrator's award . . . must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); accord *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 293 Conn. 770–71 (*Katz, J.*, dissenting). "[E]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 88–89.

Applying these principles to the case at hand, as we previously indicated, the submission agreed upon by the parties asked the arbitrator to decide: (1) "Did the [department] have just cause to dismiss . . . Listro?"; and (2) "If not, what shall be the remedy consistent with the terms of the collective bargaining agreement?" The award concluded as follows: "In the totality of circumstances, there is just cause for . . . Listro's separation from her employment at the [department]." The award, therefore, manifestly conforms to the submission. Indeed, the parties agreed to this broadly framed submission. Had they intended to limit the arbitrator's consideration to specific conduct, specific evidence, or a specific state of mind, they could have limited the scope of the submission if the agreement permitted such a limitation. See *United Electrical Radio & Machine Workers of America Local 235* v. *Union Mfg. Co.*, supra, 145 Conn. 289 ("[t]he parties themselves control the form in which a submission is made").

We therefore turn to the question of whether, in reaching her conclusion, the arbitrator's award failed to draw its essence from the collective bargaining agreement. At the outset of her decision, the arbitrator cited article 16, § 1, of the parties' collective bargaining agreement as the pertinent provision. That section of the collective bargaining agreement provides in relevant part: "No permanent employee . . . shall be . . . dismissed except for just cause. Just cause may include *but is not necessarily restricted to* incompetency, inefficiency, neglect of duty, misconduct or insubordination." (Emphasis added.) Thus, the question is whether the arbitrator was arguably applying this definition of just cause in concluding that negligence by Listro constituted such cause. See *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 293 Conn. 755 ("as long as the arbitrator is even arguably

construing or applying the contract and acting within the scope of authority, the award must be enforced" [internal quotation marks omitted]). We first note the expansive language of article 16, § 1, of the collective bargaining agreement—that just cause is "not necessarily restricted to" the listed justifications for dismissal. We further note that most of the examples of just cause provided in article 16, § 1, of the collective bargaining agreement could arise as a result of either negligent or intentional conduct. For these reasons, we agree with the Appellate Court that "negligence arguably came within the purview of the [collective bargaining] agreement . . . ." *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, supra, 142 Conn. App. 10; see also *Local 1042, Council 4, AFSCME, AFL-CIO* v. *Board of Education*, 66 Conn. App. 457, 463–64, 784 A.2d 1018 (2001) (when arbitration panel resolved ambiguity in collective bargaining agreement, plaintiff failed to carry burden of showing that award did not conform to submission because it could not establish that agreement was unambiguous). Thus, contrary to the union's argument, the arbitrator did not "dispense her 'own brand of industrial justice' "; she interpreted the collective bargaining agreement when concluding that negligence constituted just cause for discipline, including dismissal.

To the extent that the union contends that the arbitrator exceeded her authority in relying on Listro's off duty conduct, we disagree. The union argues that there was no nexus to her employment because Listro's inattention to M did not "make her unable to mentor adolescent girls, or unable to run programs for mentors and mentees." The collective bargaining agreement did not, however, limit just cause for dismissal to conduct on the job. Cf. *James* v. *Dale*, 355 F.3d 1375, 1378 (Fed. Cir. 2004) (discussing federal nexus requirement in light of statute permitting agency to terminate employee "only for such cause as will promote the efficiency of the service" [internal quotation marks omitted]).[9] Nor did it specify that any off duty misconduct must impair the employee's ability to perform her particular job responsibilities, as opposed to the department's ability to perform its mission generally. See *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 801, 758 A.2d 387 (dismissal for off duty conduct was proper for person employed by department as driver of children in light of Commissioner of Children and Families' obligation under General Statutes § 17a-90 [a] to "have general supervision over the welfare of children who require the care and protection of the state"), cert. denied, 255 Conn. 905, 762 A.2d 910 (2000). Indeed, this "nexus" requirement is not a separate ground under our case law for vacating an award sustaining a termination decision, nor is the union challenging the award on public policy grounds. Rather, the question is whether the arbitrator arguably was construing and

applying the agreement. In the present case, the arbitrator found that Listro's conduct was related to her job because the department is "charged with the safety of children in [its] care . . . ." In light of the department's mission and the just cause provision of the parties' contract, we cannot say that the arbitrator exceeded her authority in concluding that there was a sufficient nexus between Listro's off duty conduct and her employment to constitute just cause for discipline.

We turn next to the union's argument that the arbitrator exceeded her authority by disregarding her own factual findings, principal among which was the arbitrator's determination that "the [d]epartment . . . failed to carry its burden of establishing that . . . Listro committed the fatal abuse of which she was accused."[10] The union essentially claims that this court may review the arbitrator's ultimate conclusion of fact—that there was just cause to terminate Listro—because that conclusion is against the evidence presented to the arbitrator. This claim, however, has no basis in arbitration law. To the extent that the union states a claim separate from those resolved by our preceding analysis, this argument appears to be "a thinly veiled attempt to have the award vacated on the ground that it was not supported by any evidence presented at the hearings." *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 154, 523 A.2d 1271 (1987). A court does not sit to review the factual findings of an arbitrator. See id., 155 ("the trial court's review of an arbitral award is a far cry from a trial de novo"). This court considered a similar argument in *Milford Employees Assn.* v. *Milford*, 179 Conn. 678, 684, 427 A.2d 859 (1980), wherein "the plaintiffs assert[ed] that, as a matter of law, the evidence required a conclusion in their favor." In rejecting the plaintiffs' argument, this court noted that the plaintiffs were essentially requesting a full trial on their claim, which § 52-418 does not permit. Id. This court explained: "The parties freely bargained for the remedy of arbitration in the event of a dispute of this nature. Having done so, they are bound by the decision lawfully rendered." Id.; cf. *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation*, 273 Conn. 746, 757, 873 A.2d 155 (2005) (inconsistency between arbitrators' award and findings of fact does not permit court to vacate award as manifestly disregarding law; General Statutes § 4-61 [e], requiring arbitrators interpreting public works contracts to issue written findings of facts "contains no well defined, explicit or clear requirement that the award be consistent with the findings of fact"); *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 96, 868 A.2d 47 (2005) ("Hartford Steam Boiler . . . contends that the award manifests an egregious or patently irrational application of the law because the award rests on factual findings that, according to Hartford Steam Boiler, are wholly unsupported by the undisputed evidence.

As we have stated, however, courts do not review the evidence or otherwise second-guess an arbitration panel's factual determinations when the arbitration submission is unrestricted." [Internal quotation marks omitted.]). We note, however, that it would not be inconsistent for the arbitrator to conclude that M's fall due to Listro's inattention could have been the last straw on top of previously inflicted traumatic injuries that led to M's death, even if Listro was not responsible for those prior injuries.[11]

Nonetheless, even if we were to conclude that the arbitrator ignored her own factual findings, we still would have to conclude that the trial court's vacatur of the award was improper. "This court frequently has stated that the award rather than the finding and conclusions of fact controls, and that, ordinarily, the memorandum of the arbitrator is irrelevant." *Board of Education* v. *Bridgeport Education Assn.*, supra, 173 Conn. 292; see also *Hudson Wire Co.* v. *Winsted Brass Workers Union*, 150 Conn. 546, 553, 191 A.2d 557 (1963) ("The arbitrator filed an extended memorandum setting forth the process of his reasoning and the bases of his award. We may disagree with both, but unless his memorandum patently shows an infidelity to his obligation, the result reached by the award, and not the memorandum, controls."). As previously explained, because the arbitration award clearly resolved the issue presented to the arbitrator and did so while remaining within the confines of the parties' collective bargaining agreement, the trial court's review should have ended there.

Finally, we turn to the union's notice claims. The union argues that the arbitrator's reliance on Listro's negligent conduct, as opposed to the intentional conduct cited by the department, deprived Listro of sufficient notice of the issue before the arbitrator. The union challenges notice on two grounds: as a violation of due process and as a violation of the parties' collective bargaining agreement. Due process requires that an employee be provided with notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Board of Education* v. *Loudermill*, supra, 470 U.S. 546. Article 16, § 2 (a), of the notice provision of the parties' collective bargaining agreement similarly provides in relevant part: "Prior to a decision to suspend an employee, demote an employee . . . or dismiss an employee, the [department] shall provide the employee with oral or written notice. . . . The notice shall include what form of action is being considered, shall contain a concise statement explaining what evidence supports the imposition of the action that is being considered and shall state a specific time and place for a meeting where the employee will be given an opportunity to present his side of the story . . . ." Because these notice requirements are substantially similar, we consider these two claims collectively.

Our conclusion that the award drew its essence from the just cause provision of the collective bargaining agreement largely resolves these claims. Indeed, in arguing that Listro lacked notice of a "charge of negligence," the union contends that Listro's purported negligence was not within the scope of the submission. Rather, the union claims, the parties only asked that the arbitrator determine whether the department had just cause for termination.

It was not necessary for the department to cite "negligence" as the reason, or an alternative reason, for Listro's dismissal. Cf. *Pergament United Sales*, *Inc.* v. *National Labor Relations Board*, 920 F.2d 130, 135 (2d Cir. 1990) ("Notice does not mean a complaint necessarily must state the legal theory upon which the [employer] intends to proceed. Instead notice must inform the respondent of the acts forming the basis of the complaint."). Neither was it necessary for the arbitral award to mirror the department's arguments in order to provide Listro with sufficient notice. Cf. *TiVo*, *Inc.* v. *Goldwasser*, 560 Fed. Appx. 15, 21 (2d Cir. 2014) (argument that arbitration panel exceeded authority because panel's reasoning "did not wholly track the parties' arguments" meritless); *Rosati* v. *Bekhor*, 167 F. Supp. 2d 1340, 1345 (M.D. Fla. 2001) ("[T]he general issue submitted to the arbitration panel was securities fraud. While the specific law mentioned in the [a]ward was not submitted to the arbitrators, the issue of securities fraud was submitted." [Emphasis omitted.]).

Listro was clearly informed that the arbitrator would consider whether her conduct on the night of May 19, 2008, constituted just cause for termination. The initial notice provided to Listro stated that an investigatory interview would be held to "discuss [her] serious off-duty misconduct that has [led] to [her] arrest," and the termination letter explained that the decision to dismiss her was made in light of the fact that M had died while in her care. The termination letter further noted that Listro's arrest warrant "indicates that [she] provided a statement reporting that the child had fallen from the bed when [Listro] left him unattended while [she] ejected a tape from the VCR." Listro's own account of the events immediately preceding M's death in response to these charges provided the basis for the arbitrator's decision.[12] Although Listro did not concede that she had been negligent, this was a legal conclusion that the arbitrator was free to draw from her testimony, one that is not subject to review by this court. Therefore, Listro was provided with sufficient notice to satisfy her right to due process and the notice provision of the collective bargaining agreement.[13]

As the arbitrator in the present case aptly stated, this is a tragic case for all parties involved. Notwithstanding the tragic nature of this case, in light of the unrestricted, broadly phrased submission, the expansive reach of

the just cause provision of the collective bargaining agreement, and the notice to Listro that her conduct on the evening of M's death provided the basis for termination, we agree with the Appellate Court that it was improper for the trial court to grant the union's application to vacate the arbitrator's award.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, ZARELLA and ROBINSON, Js., concurred.

[1] The State Board of Labor Relations and the Office of the Attorney General were also named as defendants, but they are not parties to this appeal.

[2] We identify the foster child involved in this appeal only by his first initial.

[3] "[A] tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before termination. *Board of Education* v. *Loudermill*, supra, 470 U.S. 546. The opportunity to present one's "side of the story" is generally referred to as a *Loudermill* hearing.

[4] The arbitrator concluded that Listro's placement on the department's central registry had been done in violation of her right to due process, in part because the department had not informed her that, under department policy, she would be entitled to seek a delay of proceedings challenging the department's decision to place her on the central registry pending resolution of her criminal charges. The arbitrator ultimately disregarded the department's reliance on Listro's central registry status and found just cause for other reasons. This due process issue is not before this court.

[5] As we explain later in this opinion, under the applicable standard of review, most of the union's arguments effectively state a claim that the arbitrator's decision exceeded the scope of the submission. The Appellate Court determined that the union had not preserved a separate claim that the arbitrator exceeded the scope of the submission; *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, supra, 142 Conn. App. 7 n.7; but nonetheless effectively reviewed the claim when it concluded that the award "arguably came within the purview of the [collective bargaining] agreement . . . ." Id., 10. We conclude that the union did preserve this issue by arguing before the trial court that the arbitrator had exceeded her authority under § 52-418 (a), that the award did not conform to the parties' agreement, and that a court must compare the award with the parties' submission.

We note, however, that the union asserts an argument in this court that was not raised before either the trial court or the Appellate Court, namely, that the arbitration award conflicts with established arbitration procedures and policies. We, therefore, decline to review that claim. See, e.g., *Ferraro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 754, 99 A.3d 1114 (2014) (declining to review unpreserved claim).

[6] In support of each of these contentions, the union makes myriad subsidiary arguments. The connection between the union's arguments and the legal standard for vacating an arbitral award is not always clear, as the union has relied on federal case law that does not involve review of arbitration decisions and/or involves statutory language that is inapplicable to the present case. We have attempted, therefore, to resolve these arguments as best we can through application of our arbitration case law and the language of the relevant documents in the present case.

[7] The union's only argument in which it asserts that the arbitrator manifestly disregarded the law is its claim that the arbitration award failed to draw its essence from the collective bargaining agreement. The union, however, does not analyze the claim as such but, rather, argues that the arbitrator ignored the terms of the parties' collective bargaining agreement. The requirement that an arbitrator's decision must draw its essence from the parties' agreement is analyzed by considering the parties' submission and the terms of the agreement. An arbitrator's power derives from the agreement, and if an arbitration award does not "draw its essence" from the agreement, then the arbitrator has exceeded the scope of the authority that the parties have vested in her. Therefore, we do not consider in the present case whether the arbitrator manifestly disregarded the law, a claim on which litigants have yet to prevail in our courts. See *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 848 n.12, 6 A.3d 1142 (2010) ("[t]he exceptionally high burden for proving a claim of manifest

disregard of the law under § 52-418 [a] [4] is demonstrated by the fact that, since the test was first outlined in *Garrity* [v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992)], this court has yet to conclude that an arbitrator manifestly disregarded the law" [internal quotation marks omitted]).

[8] The union argues that this court must apply de novo review in determining whether an arbitration award conforms to the submission. As this court explained in *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85, although this court has stated that a court's review of an arbitration award is " 'in effect, de novo judicial review,' " this means only that we draw our own conclusions regarding whether an arbitration award conforms to the submission. In *Harty*, we explained that our standard of review "best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission." (Footnotes omitted; internal quotation marks omitted.) Id., 85–86.

[9] The cases cited by the union in support of its argument that courts will reverse discharge decisions when the employee's conduct was unrelated to on-the-job performance are inapposite. They all occurred in the context of a federal court's review of an *agency* decision, involving a less restrictive standard of review than our review of an arbitration decision, and requiring application of a federal statute requiring a specific nexus. Compare *D.E.* v. *Dept. of the Navy, MSPB*, 721 F.2d 1165, 1166 (9th Cir.) (court shall "hold unlawful any agency action which we find to be arbitrary, capricious, or an abuse of discretion; procedurally defective; or unsupported by substantial evidence"), amended, 722 F.2d 455 (9th Cir. 1983); *McLeod* v. *Dept. of the Army*, 714 F.2d 918, 922 (9th Cir. 1983) (reviewing agency action under arbitrary and capricious standard); *Young* v. *Hampton*, 568 F.2d 1253, 1257 (7th Cir. 1977) (judicial review of agency decision limited to ensuring "that required procedures have been substantially complied with and that the action taken was not arbitrary or capricious" [internal quotation marks omitted]), with *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, supra, 293 Conn. 753–54 (when submission to arbitrator is unrestricted, court will not review award for errors of law or fact); see also *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 155, 523 A.2d 1271 (1987) ("judicial review of arbitration awards is even more restrictive than judicial review of a decision of an administrative agency under the Uniform Administrative Procedure Act").

[10] The union also questions the arbitrator's finding that Listro was negligent, arguing that Listro's conduct was not the proximate cause of M's death. Whether there is sufficient evidence to prove negligence is not a question that this court may consider in reviewing an arbitration award. See, e.g., *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 96, 868 A.2d 47 (2005) ("courts do not review the evidence or otherwise second-guess an arbitration panel's factual determinations when the arbitration submission is unrestricted"). Moreover, although in her dissent Chief Justice Rogers concludes otherwise, there is no claim in the present case that the award is in manifest disregard of the law of negligence. Indeed, although the union clearly was aware of the elements of a claim of manifest disregard of the law; see footnote 7 of this opinion; the union made only a single vague reference in its brief to the elements of a negligence cause of action, and did so only in connection with its argument that there was *insufficient evidence* to support the arbitrator's conclusion that Listro was negligent. Nowhere did the union contend that the arbitrator appreciated the existence of the governing legal principles of a negligence claim and yet that she decided to ignore them. See, e.g., *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 307, 901 A.2d 1198 (2006). Furthermore, under our governing law, it is difficult to comprehend how a claim of manifest disregard of the law could lie where the arbitrator did not recite the principles which she is alleged to have disregarded; see id., 312 (claim of manifest disregard of law failed where party could not show that arbitrator "considered, but elected to ignore, governing legal principles"); and, indeed, where it is not clear that the arbitrator even intended to use the term "negligence" in the strict legal sense, rather than merely colloquially, to suggest that Listro failed to exercise due care under the circumstances.

[11] Connecticut courts have consistently recognized that, under the eggshell plaintiff doctrine, a defendant in a negligence action must take her plaintiff as she finds him. See, e.g., *Rua* v. *Kirby*, 125 Conn. App. 514, 516 n.2, 8 A.3d 1123 (2010) ("[W]here a tort is committed, and injury may reasonably be anticipated, the wrongdoer is liable for the proximate results of that injury, although the consequences are more serious than they would have been, had the injured person been in perfect health. . . . The eggshell plaintiff doctrine . . . makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more susceptible to injury because of a preexisting condition or injury." [Internal quotation marks omitted.]). In considering Listro's own account of events, the arbitrator may have drawn the inference that M's fall was the last straw for earlier inflicted injuries, when, according to Listro, M became limp and unresponsive *immediately* after he fell and died only a few hours later.

[12] For this reason, the cases on which Justice Eveleigh relies in his dissent are inapposite because here, Listro, the party whose due process rights were at issue, is the one who introduced the very facts that formed the basis of the arbitrator's decision.

[13] In support of its argument that Listro lacked notice, the union contends that because Listro's termination letter cited two department regulations, the arbitrator's conclusion that Listro was negligent reflected that the arbitrator "substitute[d] her own standard and basis for the award . . . rather than the [a]dministrative [r]egulations stated in the termination letter." The union does not contend, however, that conduct that constitutes just cause under the collective bargaining agreement could not constitute just cause under the regulations. We therefore view this argument as merely a variation on the union's claim that Listro lacked notice because the department never cited negligence as a basis for its decision to terminate her employment.

----